589 P.2d 510 (1978)
PROFESSIONAL RODEO COWBOYS ASSOCIATION, INC., a Colorado Nonprofit Corporation, Plaintiff-Appellee and Cross-Appellant,
v.
WILCH, SMITH & BROCK, a partnership, John J. Smith, Roy E. Brock, Jr., Donald E. Gwinn, Defendants-Appellants and Cross-Appellees.
No. 77-883.
Colorado Court of Appeals, Div. I.
December 28, 1978.
*511 Holland & Hart, Jane Michaels Talesnick, John D. Coombe, Edward M. Giles, Denver, for plaintiff-appellee and cross-appellant.
Yegge, Hall & Evans, Eugene O. Daniels, Denver, for defendants-appellants and cross-appellees.
BERMAN, Judge.
This suit was brought by the Professional Rodeo Cowboys Association, Inc. (PRCA) against Wilch, Smith & Brock, a partnership, and three individual partners therein (Accountants), for damages for malpractice by the Accountants.
The PRCA is a nonprofit corporation whose members are rodeo cowboys. The PRCA sanctions rodeos and keeps records of its members' winnings. At the conclusion of each rodeo season the PRCA employs outside accountants to verify the records of the cowboys' winnings. After this audit the PRCA invites the top fifteen cowboys in each event to the National Finals Rodeo and, at the conclusion thereof, crowns the World's Champion All-Around Cowboy. The champion is that cowboy who has won the most prize money in sanctioned rodeos for the entire season.
In 1975, as in prior years, the Accountants were employed by the PRCA to verify the cowboys' winnings. Based on this verification, and the results of the National Finals Rodeo, it was determined that Leo Camarillo had beaten Tom Ferguson for the championship by approximately $100. Camarillo was therefore crowned champion. Several weeks later Ferguson questioned the accuracy of the audited PRCA records, and it was determined that the Accountants had made two errors which, if corrected, showed that Ferguson was entitled to the championship. This led to a dispute between Camarillo, Ferguson, and the PRCA as to who was entitled to the championship. To settle this dispute it was agreed that the two cowboys would be declared co-champions and that the PRCA would award prizes and money to Ferguson equal to those which had been given to Camarillo. As part of this settlement the PRCA also agreed to pay the expenses and attorneys' fees that the cowboys had incurred.
The PRCA then filed this action to recover the money paid by the PRCA in settling the dispute and for $200,000 for loss to its business reputation. The latter claim was dismissed by the trial court at the conclusion of the PRCA's case. The jury found that the Accountants were negligent, that such negligence was a proximate cause of the PRCA's claimed damages, that the PRCA was not contributorily negligent, and that the amount of damages sustained by the PRCA and proximately caused by the Accountant's negligence was $43,600.98. *512 Both plaintiff and defendants have appealed this judgment. We modify the judgment, and, as so modified, affirm.

I. Issues on Appeal
Defendants first argue that plaintiff failed to establish a prima facie case of negligence or of proximate cause and that therefore the trial court erred in denying defendants' motion for a directed verdict at the conclusion of plaintiff's case. We disagree.
In passing upon a motion for a directed verdict the evidence must be viewed in the light most favorable to the party against whom the motion is directed, and "[t]he issue is for the jury when the evidence is such that different conclusions might be drawn by fair minded men . . .." Safeway Stores, Inc. v. Langdon, 187 Colo. 425, 532 P.2d 337 (1975).
Here, during plaintiff's case there was both expert testimony that defendants' failure to detect the two errors was a breach of their duty of care, and competent testimony that the effect of these errors was "the erroneous naming of the world champion cowboy." Therefore, the trial court properly denied defendants' motion for a directed verdict. Furthermore, since the evidence was sufficient to support the jury's findings of negligence and proximate cause, those findings must be affirmed. See Colorado-Wyoming Ry. v. Wheelock Bros., Inc., 155 Colo. 406, 395 P.2d 1 (1964).
Defendants next argue that the trial court erred in denying defendants' motion, made at the commencement of trial, to strike plaintiff's claim for loss to business reputation. We disagree.
Defendants' motion was based on allegedly insufficient responses by plaintiff to an interrogatory regarding the amount of plaintiff's damages. Defendants, however, did not avail themselves of the remedies provided in C.R.C.P. 37, and therefore, they may not now complain that the responses were deficient. See Moses v. Moses, 180 Colo. 397, 505 P.2d 1302 (1973).
In refusing to strike this claim, the trial court stated as follows:
"It's premature for the Court to determine at this time whether or not damages are sustained; that will have to be determined after the Court hears the evidence."
The trial court acted properly in refusing to strike plaintiff's claim until after it heard the evidence with respect thereto.
Defendants, in effect, argue that even if the court was not in error in refusing to strike this claim at the commencement of trial, error was committed in failing to strike the evidence which had been admitted in support of this claim when, at the close of plaintiff's case, the court did dismiss the claim.
They contend that the evidence introduced in support of the claim was prejudicial to them and affected the jury's determination of liability and damages. We find defendants' position to be without merit. Except for a videotape of the television show of the National Finals Rodeo, the documentary evidence in support of the business reputation claim was not shown to the jury before the claim was dismissed. And the videotape itself did not relate solely to the matter of business reputation. Rather the announcer's statement, at the end of the show, that a dispute existed as to which of the two top contenders was in fact the "champion," also tended to show that plaintiff's behavior in settling the dispute was reasonable.
Nor did the defendants, when they renewed their motion to strike at the close of plaintiff's case, specifically designate that evidence which they sought to have stricken. And, their failure to fulfill their obligation in this respect precludes them from basing prejudicial error on this aspect of the trial. See Mosko v. Matthews, 87 Colo. 55, 284 P. 1021 (1930); Webber v. Emmerson, 3 Colo. 248 (1877).
Instead of showing any actual prejudice in support of this contention, defendants rely on cases which hold that the introduction of inadmissible evidence over objection is presumed prejudicial unless it affirmatively *513 appears that it was not. E. g., Mangus v. Miller, 35 Colo.App. 335, 535 P.2d 219, cert. dismissed, 189 Colo. 481, 569 P.2d 1390 (1975). However, since the trial court granted defendants' motion to strike the claim when it was renewed at the close of plaintiff's case, that presumption does not exist. Cf. David v. Gilbert, 85 Colo. 184, 274 P. 821 (1929).
We point out that when the instructions which the court proposed to give were delivered to defendants they had no objections thereto, nor did they propose any instructions delineating the evidence which they wished the court to instruct the jury to disregard. Therefore, we conclude that, in the circumstances of this case, there is no error.
Defendants also contend that the trial court erred in allowing plaintiff to recover as damages the costs and attorneys' fees incurred by plaintiff and Camarillo and paid by plaintiff in negotiating the settlement of the underlying dispute. We find no error.
"When the natural and probable consequence of a wrongful act has been to involve plaintiff in litigation with others, the general rule is that the reasonable expenses of the litigation may be recovered from the wrongdoer." International State Bank v. Trinidad Bean & Elevator Co., 79 Colo. 286, 245 P. 489 (1926). Cf. McNeill v. Allen, 35 Colo.App. 317, 534 P.2d 813 (1975). There is no reason to depart from this general rule where, as here, there is sufficient evidence to uphold the jury's findings of negligence and proximate cause. Defendants' argument that plaintiff's own negligence bars recovery of these monies must be rejected in light of the jury's express finding that plaintiff was not contributorily negligent. We also reject defendants' additional argument that the recovery of such monies is limited to cases involving allegations or proof of fraud; there is no mention of this limitation in the cases. International State Bank, supra; McNeill v. Allen, supra.
In addition, defendants argue that the amounts of these costs and attorneys' fees are unreasonable as a matter of law. There was, however, ample evidence as to the reasonableness of each of these expenses, as well as competent evidence that plaintiff's behavior in settling the underlying dispute was reasonable under the circumstances. Thus there was no error in allowing plaintiff to recover these damages.
Finally, defendants argue that the trial court erred in granting plaintiff's motion, under C.R.C.P. 37(c), for expenses incurred by plaintiff in proving certain facts which defendants had previously failed to admit. Again, we disagree.
The awarding of costs under C.R. C.P. 37(c) is within the sound discretion of the trial court and will not be interfered with on appeal absent an abuse of that discretion. See Lamont v. Riverside Irrigation District, 179 Colo. 134, 498 P.2d 1150 (1972); Superior Distributing Corp. v. White, 146 Colo. 595, 362 P.2d 196 (1961). Here the trial court granted the motion because "no reason [was] shown why reasonable expenses incurred should not be granted . . .." Under the circumstances we cannot say that there was an abuse of discretion.

II. Issues on Cross-Appeal
Plaintiff argues that the trial court erred by granting defendants' motion for a directed verdict, at the close of plaintiff's case, on its claim for lost income and damage to business reputation. We disagree.
Plaintiff argues that evidence of the loss of an expected television contract was sufficient to allow this claim to go to the jury. Although damages to a business are recoverable in certain situations, such recoveries are limited to losses of net profits. Lee v. Durango Music, 144 Colo. 270, 355 P.2d 1083 (1960). We agree with the trial court that plaintiff's evidence of net loss was insufficient to submit this claim to the jury.
In order to establish net profits it is necessary to show the expenses of operation. Lee v. Durango Music, supra. Our review of the record discloses no evidence *514 of expenses from which a net loss could be calculated.
Plaintiff directs our attention to two portions of the testimony for the proposition that plaintiff's costs of negotiating the television contract were fixed, urging that therefore the total amount of money which plaintiff would have received from the contract is a net loss. The first portion is from the direct examination of an attorney who represented the plaintiff and who was involved in negotiating television contracts on the plaintiff's behalf. The testimony is as follows:
"Q. For how long have you represented the Professional Rodeo Association of Cowboys?
"A. Well, the first year was 1967. Then I think there was a period in approximately '71 to about '73 where they retained an executive who felt that he had television expertise and I said that I'd be very glad to help him, but that if he was going to hit the networks, I didn't think I ought to get involved in charging the PRCA on top of that and he ought to get a chance to do it. And then after a couple of years he left and I was retained again. So it's beenwith that hiatus, it's been since 1967."
An inference from this testimony that plaintiff's costs of negotiating television contracts was fixed would be purely speculative. Although the attorney stated that he was "retained," there is no evidence as to what services the retainer covered. This testimony, therefore, does not support plaintiff's position, and is not evidence of plaintiff's expenses.
Similarly, the other portion of the testimony to which plaintiff directs us, which is from the direct examination of an employee of the plaintiff, does not indicate that the employee was paid a fixed salary. Even if this fact had been shown, it would be insufficient to show that plaintiff's costs were fixed because of the lack of such evidence as to the attorney's expenses during the negotiations. Thus we cannot say that the total amount expected from the television contract was a net loss. Cf. P & M Vending Co. v. Half Shell of Boston, Inc., Colo. App., 579 P.2d 93 (1978).
Plaintiff also argues that the trial court erred in excluding evidence of money paid by plaintiff to Ferguson, in settling the underlying dispute, as reimbursement for attorney's fees incurred by Ferguson. Although the trial court originally allowed this evidence, it later reversed its ruling because, in its opinion, there was no evidence of the reasonableness of the fees. Plaintiff's position is that evidence of the reasonableness of the settlement as a whole, and of the necessity therefor, was sufficient to allow this evidence without showing the reasonableness of the attorney's fees separately. In the circumstances of this case, we agree.
Although evidence of the reasonableness of attorneys' fees is generally required in order to recover those fees, see, e. g., Waterman v. Sullivan, 156 Colo. 195, 397 P.2d 739 (1964), the situation is somewhat different here where those fees are sought as expenses caused by the tortious conduct of another, see International State Bank, supra, and are merely one part of an overall settlement. Under these circumstances the reasonableness requirement is met by showing that the settlement as a whole is reasonable. See Transamerica Insurance Co. v. Bloomfield, 401 F.2d 357 (6th Cir. 1968); National Surety Corp. v. Peoples Milling Co., 57 F.Supp. 281 (W.D.Ky.1944). Here there was ample evidence from which the jury could have concluded that the settlement was necessary and reasonable, and the jury's verdict shows that it did so conclude. Thus, it was error to keep the jury from considering that portion of the settlement, $1500, which represented money paid to Ferguson for attorney's fees which he had incurred.
An appellate court has authority to increase a judgment in certain situations. Shirley v. Merritt, 147 Colo. 301, 364 P.2d 192 (1961); Mystic Tailoring Co. v. Jacobstein, 94 Colo. 306, 30 P.2d 263 (1934). Here the jury's verdict is conclusive as to defendants' negligence, proximate cause, and as to the lack of contributory negligence. And *515 the jury awarded damages equal to the full amount claimed and which the court allowed the jury to consider. Thus it is clear that the jury found the settlement reasonable and intended to award all expenses incurred by plaintiff thereunder. We therefore direct the trial court to increase the judgment in favor of plaintiff by $1500.
The case is remanded to the district court with directions to modify the judgment by increasing it by $1500 and the judgment as so modified is affirmed.
COYTE and SMITH, JJ., concur.